RESPONSE TO THE GOVERNMENT
<u>BOYD v. USA:  25-CV-11563 (E.D. Mich).</u>



NOW COMES, ERIC BOYD, in propria persona, in response to the United States Government's Reply.  My 28 U.S.C. §2241 petition (ECF 1), presents three issues based upon First Step Act (FSA) Time Credit (FTC) eligibility.  The government sent the aforementioned petition to S. Allison-Love, the Consolidated Legal Center Attorney for the Federal Correctional Facility, Milan, located in Milan, Michigan, (FCI Milan), where I am currently housed.  Ms. Love replied with a predominately "boiler-plate" declaration which included a single sentence suggesting that I failed to exhaust my administrative remedies (ECF 9-6 @ 5), and four sentences arguing I am FTC ineligible. (ECF 9-6 @ 3).  At no point did she address any of my FTC arguments.  Instead, her perfunctory FTC counter is based on a single sentence in my petition's opening background section, page 2.  The government then RESPONDED TO THE DECLARATION"S THIN REED RATHER THAN MY PETITION.  Additionally, to obfuscate that it acquiesed to my argument by its silence, the government relied on pro-se stereotypes to condenscendingly dismiss my petition.  I urge this court to reject the government's evasive, unavailing sophistry, and instruct the Bureau of Prisons (BOP) to award me FTC as Congress intended.

I. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

As stated on page (2) of my petition, I spoke with Unit Manager M. Kirk, who, in turn, spoke with Ms. Love, and she initially determined I qualified for FTC.  However, the Designation/Sentence Computation Center (DSCC) overruled

1

her decision. Since the DSCC is where the BOP (at all levels) turns to for answers, as relating to sentencing computation adjudication(s), it is highly unlikely that -- at any level -- relief would be granted. And since the DSCC is a national center, that is even more true for the local Informal Resolution (BP-8), local Request for Administrative Remedy (BP-9), and Regional Administrative Remedy Appeal (BP-10).

"Failure to exhaust Administrative Remedies 'may be excused where pursuing such remedies would be futile.'" Gale v. Rardin, 2025 U.S. District LEXIS 8739, *6 (citing Frazzini v. Northeast Ohio Corr. Ctr., 433 F. 3d 229, 236 (6th Cir. 2006)). Yet, even though relief from the Administrative Remedy process was likely futile, I still MADE AFFIRMATIVE EFFORTS to comply with the Administrative procedures. See Risher v. Lappin, 639 F.3d 236, 240 (6th Cir. 2011)(citation omitted).

Since the government has elected to claim that I failed to exhaust my Administrative remedies, I am forced to make explicit allegations that were only alluded to in my petition, (p. 2). I filed not one, but two BP-8's and BP-9's: One set in July, 2024, (the BP-9 ]attached]), and one set in December, 2024, [attached to petition]. Following my initial filing, I discovered that it is common knowledge at FCI Milan that in some instances, BP-8's and BP-9's can get routinely "lost." Nonetheless, after the first set was "lost" I continued my affirmative efforts by submitting the second set. When those too vanished -- since an "inmate" may consider the absence of a response as a denial at that level, (28 CFR §542.18), I was planning on submitting a BP-10. However, I learned that with a "lost" BP-9, Policy dictates the automatic rejection of a BP-10. Faced with the prospect of beginning the process a third time, and realizing the DSCC had already passed judgment, I had no reasonable alternative but to consider my Administrative

2

remedies exhausted and submit my petition.

The only credible conclusion that one can draw from the repeated and widespread loss of BP-8's and BP-9's at FCI Milan is the attempt by staff to thwart the Administrative remedy process. "A request or appeal is considered filed on the date it is logged into the Administrative remedy index as received. Once filed, response shall be made by the warden or CCM within 20 calander days" Ibid. A "lost" BP-9 means no loggig, no deadline, and no BP-10. In this way the entire formal system fails with zero accountability for the perpetrators. Grievances will thus disappear with no recourse for inmates if the courts are also closed, as the government advocates.

"Non-exhaustion is an affirmative defense under the PLRA, with the burden of proof falling on the Bureau." F. 3d at 240 (emphasis added). The government does not cite case law regarding failures to exhaust Administrative remedies. ECF 9 at 4-5. Moreover, Ms. Love does not outline the Administrative remedy procedure ECF 9-6 at 3-5. But the only sentence arguing my failure to exhaust is Ms. Allsion-Love's declaration that FCI Milan's "records show Petitioner has not submitted any Administrative remedies" ECF 9-6 at 5. Yet, the proof that I submitted my second set of BP-8's and BP-9's to Mr. Perez was attached to my petition and unrefuted. Surely ignoring clear and contradictory evidence fails to meet any reasonable standard of proof.

Courts analyze whether "efforts to exhaust were sufficient under the circumstances." Risher, 639 F. 3d at 240 (citation omitted). But those efforts are only required "until such Administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a)." Ibid. (emphasis added). FCI Milan's repeated losing of BP-9's made Administrative remedies unavailable. "When pro-se inmates are required to follow agency procedures to the letter...[There

3

is] no reason to exempt the agency from similar compliance." Id. at 241. Thus, even if the loss of the BP-9's was from incompetence, rather than misconduct, the result is the same: In such cases starting the clock on BOP default should be calculated based on action(s) controlled by the inmate, not staff. Even sllowing ten days for logging (thus equating the thirty days specified in 18 U.S.C. §3582(cxi)(A) for default in cases of compassionate release) the BOP defaulted -- twice -- thereby exhausting the Administrative remedy process.

Finally, since the BOP -- after having access to my arguments -- has already rendered its judgment in this case, continuing the Administrative remedy process would only waste everyone's time and energy. If this Court is to correctly render its judgment, please let it be now.

## II. FTC ELIGIBILITY

The government opines that I cited "no authority supporting my arguments." ECF at 9. But neither did the government cite any case law refuting them -- thus supporting my contention that they are novel.

Since courts "Do not generally entertain arguments that were not raised" (Burwelly v. Hobby Lobby Stores Inc., 573 U.S. 682, 721 (2014), they require adjudication. Krieg v. Warden, 2025 U.S. App. LEXIS 7276, 4 (6th Cir., Mar. 27, 2025) implicitly supports this sentiment ("None of Krieg's arguments on appeal alter this conclusion.")

While courts always need to guard against bias, that is particularly true where it may be subconsciously born of an interpretive deference that no longer exists. Such is the case with the issues of this case, which were

4

repeatedly litigated under Chevron USA, Inc. v. National Resources Defence Council Inc., 467 US 837 (1984)(overruled by Loper Bright Enters v. Raimondo, 144 S.Ct. 2244 (2024).

### A. REVOCATION SENTENCES ARE PRIOR SENTENCES FOR FTC PURPOSES.

Section 3632(d)(4)(D)(ii) is where Congress specified FTC-ineligible "previous conviction[s]". My petition (at pp. 3-4) argues that whether or not there is aggregation after release from prison the original offenses underlying sentences of revocation are inherently previous convictions for FTC purposes and, thus, they should be classified with prior offenses under §3632(d)(4)(D)(ii) -- which excludes §924(c) as a disqualifying offense.

Ms. Allison-Love indirectly provides support. Because my present convictions are the only ones administratively relevant, accordingly, those were the only BOP sentence printouts attached to her declaration. They are clearly marked as current by the BOP -- and are both based on the same FTC-eligible criminal conduct. Additionally, attached as an exhibit in my petition were the BOP sentence printouts from my previous sentence clearly marked "PRIOR" by the BOP. Only they pertain to FTC-ineligible criminal conduct. Thus, even the BOP acknowledges the distinction.

It should be noted that although otherwise silent, the government cites Krieg v. Warden, No. 24-5264, 2025 U.S. App. LEXIS 7276 (6th Cir. March 27, 2025), in which Krieg seems to raise this same issue. But the court did not address it. Rather, the court ruled based on the issue of aggregation.

in the rejection of Hill v. King, 2024 U.S. Dist. LEXIS, 242122 (D. Minn. Oct. 7, 2024)(Hill 1)[rejected in Hill v. King, 2025 U.S. Dist. LEXIS 65565 (D. Minn. Apr. 7, 2025)(Hill 2). It will be most productive to use Hill and Giovinco in the instant response.

1. CASE LAW:

> "THE BOP ACKNOWLEDGES THAT THE MOST NATURAL READING OF §3632(d)(4)(D), STANDING ALONE MIGHT RENDER INELIGIBLE ONLY THE INDIVIDUAL SENTENCE APPLICABLE TO THE INELIGIBLE OFENSE. BUT THE BOP ARGUES THAT THE TEXT MUST BE READ IN LIGHT OF THE STATUTORY SCHEME -- INCLUDING, IN PARTICULAR, THE BOP'S OBLIGATION TO AGGREGATE SENTENCES UNDER §3584(c). ACCORDING TO THE BOP, THE STATUTORY SCHEME REQUIRES IT TO AGGREGATE MULTIPLE TERMS OF IMPRISONMENT WHEN ADMINISTERING THE FSA TIME CREDIT PROGRAM." Giovinco, 527 At 7 (endnote omitted)

Hill 1, in line with the vast majority of courts, held that §3632(d)(4)(D) and §3584(c) are ambiguous on the issue of FTC aggregation. Hill at 7,12. And thus, Loper-Bright freed the courts from ... deference to the BOP's interpretation. Id at 8. Hilll focused on Congressional intent, noting that "[T]he BOP's authority as an agency does not extend to contravening Congress." Id at 18-19. The Court determined that Congress's intent was best served by "reading §3632(d)(4)(D) as applying only to a single, (non-aggregate) sentence." Id at 17. This also supported the admonition "that interpretations that would lead to absurd consequences 'should be avoided whenever a reasonable application can be given consistent with the Legislative purpose." Id at 17 (citation omitted). For instance, under the BOP's interpretation, a 132-month FSA-eligible sentence is made ineligible by a consecutive two-month sentence. Id at 2. "Therefore, the BOP's reading of §3584(c) should not be applied." Id at 19.

Giovinco takes an opposite approach and reaches the opposite conclusion. Instead of starting from Congressional penelogical intent regarding FTC, the

## B. SENTENCE AGGREGATION IS DISTINCT FROM FTC ELIGIBILITY

The instant petition, beginning at page 4, argues that the BOP is exploiting ambiguities in §3584(c) and §3632(d)(4)(D) to impermissibly make penalogical choices under the guise of Administrative necessity. The arguments made therein are based on two important facts excluded by the BOP when it framed the FTC debate under <u>Chevron</u>: Whatever was necessary for the Administration when §3584(c) was passed in 1984, is not the same as when §3632(d)(4)(D) was passed in 2018. The BOP's current technology allows it to track the FTC eligibility of every inmate on a daily basis for "Administrative purposes" **within a single aggregate term of imprisonment**. Thus, such purposes cannot justify the BOP's unlegislated expansion of the FTC ineligibility to offenses Congress intended to be eligible. And 2) the established BOP and case law interpretive context at the passage of the FSA was that sentences with time calculation conflicts that could not be resolved within the same computation were not aggregated. <u>King v. Shultz, 2010 U.S. App LEXIS 23300, *7 (3rd Cir. 2010)</u>. Thus, the BOP can and has fulfilled §3584(c) with **separate single aggregate term[s] of imprisonment**, [where necessary to protect Congressionally mandated time credit calculations]. The first half of the government's response to the merits of the instant petition (ECF 9 at 5-8) relates to this issue. However, since its response is not based on my arguments and relies instead on mature case law, the response and the majority of its case cites are conclusional rather than fully reasoned. Hence, they cannot be meaningfully debated. The exception is <u>Martinez v. Healy, 2025 U.S. Dist. LEXIS 137132 (N.D. Ohio   July 18, 2025)</u>, [but principally relies on <u>Giovinco v. Pullen, 118 F. 4th 527 (2d. Cir. 2024)</u>. Giovinco, in turn, was a principal cause

7

court accepts the BOP's framing and makes §3584(c) -- an Administrative statute -- dominant.  Giovinco adds that "[c]ourts have recognized that the 'Administrative purpose' referenced in §3584(c) include the BOP's Administration of other types of sentencing credits, such as...good-time credits (§3632(d)(4)(D)." Id. at 8-9.  Thus Giovinco holds that, in §3632(d)(4)(D), "is serving a sentence for" is best understood as referring to the prisoner's aggregate term of imprisonment" Id at 10.

## 2. ANALYSIS:

Judicial review has been distorted by its initial deferrence to errors and omissions in the BOP's interpretations of §3584(c) and §3632(d)(4)(D). Loper Bright invites correction.  Courts are now expected to distinguish between the BOP's interpretation and Administration of those statutes.

None can dispute that Congress only wanted to restrict FTC ineligibility to the relatively narrow set of offenses listed in §3632(d)(4)(D).  Accordingly, the denial of FTC eligibility for other offenses thwarts 'legislative purpose' and 'should be avoided.'

The BOP tells us that, "for Administrative purposes, a single aggregate term of imprisonment" (§3584(c)) requires aggregation of FTC ineligibility. But that is no where to be found in §3584(c) or §3632(d)(4)(D).  Moreover, when the BOP revised its sentencing computations for the FSA, it knew it would need to track FTC elibility on a daily basis.  And thus, it knew it could have simply added aline to its computations for the date FTC eligibility began within any given 'aggregate term of imprisonment'.  Yet, instead, it chose to withold that information from the courts and create an otherwise non-existent statutory conflict.  The BOP further deceived courts by claiming that the historical §3584(c) statutory scheme requires their legislative interpretation.

As the instant petition reveals, (specifically pg. 6), long before the FSA -- to avoid aggregating the benefit of the Sentencing Reform Act (SRA), Good Conduct Time (GTC) -- the BOP successfully fought in KING for the right to administer separate 'single aggregate terms of imprisonment.' So, however, §3584(c) is read and sentences are aggregated even under Chevron, there is no reasonable justification for thwarting Congress's Legislative purpose.

C. SRA FTC INELIGIBILITY CANNOT BE AGGREGATED WITH A PLRA SENTENCE.

The instant petition at pages 6-8, argues that since under the BOP's own policy and practice, SRA and PLRA sentences cannot be aggregated then neither can FTC ineligibility. And since my only FTC ineligible offenses occurred thirty years ago, under the SRA, even if my sentence of revocation is deemed FTC-ineligible, my new PLRA FTC-eligible sentence is unaffected by it. This reading also avoids the 'absurd consequences' of treating a thirty year old sentence as 'current.' The second half of the government's response to my merits (ECF at 8-10) relates to this issue.

The government declares that I am "mixing apples and oranges by confusing sentence computation with sentence aggregation for determining eligibility to earn FSA credits." ECF 9 at 9. The government correctly catergorizes the core issue but misunderstands its meaning. Aggregation and FTC eligibility are actually the apples and oranges, and it is the BOP that is confusing them. The government attempts the semantic trick of shifting 'aggregation' (and its §3584(c) implications) from 'sentence computation' to 'FSA credits.' BUT A SENTENCE COMPUTATION IS HOW THE BOP ADMINISTRATIVELY EXECUTES AGGREGATION. This analysis is fully supported by the second BOP POLICY STATEMENT quote in the instant petition on page 7. The quote explicitly confirms that separate

9

SRA and PLRA aggregations are made pursuant to §3584(c).

The government maintains that I am attempting to "weave" a claim from different parts of BOP policy." Ibid. But if that is a reference to my initial BOP Program Statement quote, omitting text for concision is not "weaving." It reads, in its entirety:

> "[A] 924/non-924 sentence [that is ordered to run consecutively to an existing federal sentence] shall be ]added to the existing federal sentence and] shall be [added to the existing federal sentence and] calculated as an aggregated, i.e., old law and new law sentence combination or SRA/VCCLEA and PLRA combination." Program Statement 5880.28 (previously omitted text in [brackets] emphasis in original).

The government finding that these unambiguous death knells for its argument are "unclear" (ECF 9 at 9) just proves that from the FSA's outset, and in defiance of separation of powers, the BOP has been engaged in impermissable creative construction. Its manufactured statute, according to the government, directs it to aggregate FTC ineligibility, an act, untethered to sentence aggregation mandated by Congress (and enacted presumably, to aid administration in a less computerized age). Yet, as shown, not only is there no "explicit mandate" regarding "aggregation for FSA purposes" (Ibid), there is no statutory link whatsover between §§3584(c) and 3632(d)(4)(D). In making this point the government cites Martinez v. Rosales, No. 23-50406, 2024 WL 140438, *3 (5th Cir. Jan. 12, 2024). But it is inopposite. Despite its attention grabbing aggregation of a foreign sentence, its whole point was that the foregin sentence has to be treated as an ordinary domestic sentence.

The government makes passing reference to "confusing [ ]...computation data as of different dates." Let us consider those "comps". The current computation No: 40 (comp 40)(ECF at 2b), for my new 180-month sentence began

10

on 04-11-2024 and is projected to end 02-13-2036. The current computation No: 50 (comps 50)(ECF1 at 28) for my 33-month revocation sentence is projected to begin 02-13-2036 and end 06-17-2038. Each single aggregated sentence (per §3584(c)) is distinct (per Program Statement). FSA ineligibility, if any, in comp 50 cannot affect comp 40 because the latter sentence is unequivocally not being served.

    Both Ms. Allison-Love and the governemnt point to "FSA ELIGIBILITY STATUS is INELIGIBLE and Ms. Allison-Love's versions of comp 40 and comp 50 (ECF 9-6 at 9 and 11") omit "Remarks...R/JRJ;" -- as if removing the remark changes the Program Statement and case law. They confuse evidence of the BOP's position with evidence of the validity of that position.

D. CONCLUSION:

    Administrative remedies have been exhausted. Issue one has been raised by inmates but not addressed by courts. Issue two is well-traveled but not fully adjudicated because of facts withheld by the BOP. And Issue three is a first impression. All support FTC eligibility for my 180-month sentence. And Issue one also supports FTC eligibility for my 33-month revocation sentence. Given their merits, one or more Issue should be GRANTED.


RESPECTFULLY SUBMITTED,                                               09  29, 2025

*Eric A. Boyd*
MR. ERIC BOYD

11

## Certificate of Service

I certify that, on the date indicated below, I mailed a copy of my RESPONSE TO THE GOVERNMENT, BOYD v. USA: 25-CV-11563 (E.D. Mich) to the OFFICE OF THE CLERK.

Date: September 29, 2025

Eric A. Boyd
PETITIONER



Eric A. Boyd # 01807-089
FCI Milan
P O Box 1000
Milan, Michigan. 48160

RECEIVED
DEC 12 2025
CLERK'S OFFICE
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
OFFICE OF THE CLERK
THEODORE LEVIN UNITED STATES COURTHOUSE
231 WEST LAFAYETTE BLVD. ROOM 564
DETROIT, MICHIGAN 48226